Good morning, Your Honors. My name is Jennifer Dwyer. I'm an attorney from Bozeman, Montana, and I represent Jill Doran-Slevin, the appellant in this issue, or in this case. Jill Doran-Slevin was denied a fair trial to district court because the judge erroneously prevented all but one of her claims from reaching the jury and because of the obvious bias that this judge demonstrated in front of the jurors against Jill Doran-Slevin and in favor of United Parcel Service, which I'll refer to as UPS. First, the district court erred when it granted judgment as a matter of law in favor of UPS on Jill Doran-Slevin's claims under the wrongful discharge from Employment Act in Montana that UPS had violated the express provisions of its own written personnel policies. Jill proved at trial that UPS has written personnel policies. It included an employment dispute resolution program, which is a 25-page document that starts with excerpts of Record 102. That program contains five steps. It gets invoked if a employee contacts a human resources representative verbally or in writing, complaining of discrimination, unfair treatment, or separation. So in this case, that document was, or that request was, a written complaint on April 27th. Did it specifically request an investigation? Thank you, Your Honor. There was actually two letters that we believe Jill sent to Dawn Teff, the Human Resources Director of the Northwest Region, that invoked that policy. The first was the April 27th letter in which she entitled a formal complaint referring to age and gender discrimination and retaliation by her in it. She complained, she did complain of the discrimination and she asked for a heightened level of intervention by the Human Resources Department. So she did ask for that sort of relief. So it was also undisputed at trial that the UPS is bound by this policy. That was testimony from Jeff Grant, the Human Resources Operations Manager. But the Human Resources Department did follow up with her after that letter, didn't they? They did. They placed a phone call to her that was unscheduled and unannounced to discuss the letter. What they didn't do, which was established at trial, was meet with her and the other people involved, nor did they issue a non-binding final determination of human resources, nor did they engage in any of the other remaining steps under this Employment Mediation, Arbitration, and Facilitation. So therefore, we believe that UPS failed to follow its own written personnel policies on that first instance. Secondly, after she was terminated on March 16th of 2012, she again reached out to Don Teft, and this time regarding a separation, it was entitled Separation Agreement and General Release. In it, she again, she contested the reasons for her rights under state and federal law, discrimination and retaliation laws, and she sought a specific response from Don Teft explicitly and proposed even a resolution. Teft admitted at trial that he received that letter by certified mail, and it was established that UPS failed in any way to respond to that letter. But that was the first time that she mentioned her EEOC complaint, correct? I believe that she had, well, I don't know, I don't know about that, but I think that it was referenced in that letter that she had, that she had filed an EEOC complaint. After her termination, that's, is there any evidence that anyone at the UPS knew about the EEOC complaint before her termination? Well, your that UPS took the position that they didn't know about it. So what there was in the record was a copy of that letter to the EEOC, and additionally, the cases don't require that she just be complaining to the EEOC or engaging in those procedures that are provided for under federal discrimination laws. The case is established that even if she just filed an EEOC complaint, even if the company doesn't know that she filed an EEOC complaint, Yes, Your Honor, because she submitted specific complaints to the Human Resources Department and to her supervisors. So, for example, in Huey v. Honeywell, which is a Ninth Circuit case, in that circumstance, there was, the employee didn't have any knowledge of a progressive disciplinary procedure that was policy of the company. The company only shared it with their supervisors, and yet that company was bound by that written personnel policy, and I believe that the language from that case is something to the effect of having announced a personnel policy, you can't be, the company can't selectively enforce it, otherwise it would be illusory. So, for those two times that she submitted in writing, contact to Don Teft, request citing her legally protected rights, discrimination, and retaliation, and the failure of UPS to respond according to their employee dispute resolution program on either occasion, we believe that the judge erred in granting judgment as a matter of law in favor of UPS, and should have instead granted Jill Durand-Slevin's motion for judgment as a matter of law on that issue. There are jurisdictional questions in this case. Are you going to address them? I'm sorry, I didn't hear the first one. There are jurisdictional questions in this case. There are, Your Honor. Are you going to address them? I would, I will certainly address that. The issue raised by UPS in this case is that they contend that the final order of judgment from the district court was the issue that he ordered, sorry, the order that he issued on December 15th of 2014 instead of the final order on January 21st. And the reason for which that this court does have jurisdiction is because within 26 days of entry of motions to amend the pleadings, a renewed motion for judgment as a matter of law and a motion for new trial. Those are undisputedly timely filed. The judge issued an order a week later denying them for the sole grounds that they failed to comply with local rule 7.1, which states that in the body, the filer must state the opposing party's position. But that rule also provides that if this is the reason for which the order, the motion is denied, that the filer must be given the opportunity to re-file and that order cannot be with prejudice. So Jilder and Slevin was entitled to. Is that part of the rule that they must be given the opportunity to re-file? That is the language under local rule 7.1 subsection C, subjection 4. But that doesn't mean that the district court didn't actually deny them. You may have had a chance to re-file them, but why doesn't the order deny the motions? Why isn't that the triggering event? I believe that it's the letter of the rule is not discretionary. The judge doesn't have the discretion to deny that with prejudice. He did deny it, whether it was prejudice or not, or whether he had a chance to re-file. It's beside the point. The question is why, once he denied it, why isn't that the triggering event? Why doesn't the clock start running at that point? And why isn't any... You didn't file within 28 days of that order, right? Yes. Yes, you did not file. Yes, I did not. We did not. So why isn't that game over? Because we re-filed the motions in compliance with the local rule. And because of this court's interpretation of the Boll's cases... I do understand that you said that, but then so what? There's a denial. Denial triggers a... I mean, if you file these motions, the motions extend the time. But once they're denied, why isn't that the triggering event? Because of the fact that the judge can file something else, and why does that matter? Well, because we did re-file, and the UPS was given the opportunity and did respond, and the judge issued a final order finally disposing of that motion not until January 21st. So under the federal rules of appellate procedure for subsection A, subsection 4, subsection A, that triggering event is the order that disposes finally of the last remaining motion under civil procedure rule 50B or 59. So because his ruling in December that denied the motion as noncompliant was only for the reason of the local rule, that didn't trigger the... that wasn't the final rule that actually disposed or final order that disposed of those motions. They continued, and under the case of Billbrook v. BNSF, a timely post-trial motion that isn't rendered untimely merely because of failure to comply with the local rules. My understanding of that case in the Ninth Circuit's holding with respect to whether noncompliance with the local rule affects the jurisdiction of the appellate court. We also believe that... The judge, the district judge has discretion under the local rules to relieve you of the obligation if there's a time mix-up or something like that. The judge chose not to do that in this case. Why should that be disrupted when the judge clearly determined whether or not to exercise discretion to allow the refiling even though it was a day late? Well, I think I understand your question, but he didn't... The judge didn't have authority under the local rule to deny Jill Durant Slevin the opportunity to refile those motions. So once she refiled them, the issue was... Well, the judge has the authority under the rules to excuse a party from compliance with a rule like that that's not jurisdictional, but the judge chose not to do that in this case, exercising discretion not to excuse the relatively short violation of time. And why should we disturb that discretion? Well, I would submit that it would be an abusive discretion because Jill Durant Slevin would then suffer prejudice because of the judge's interpretation of the local rule in contradiction with the federal rules. And under Civil Procedure Rule 80... Did you show excusable neglect? Did you make an excusable neglect showing? Yes, Your Honor. We filed an affidavit concerning the non-willful failure to comply, and that was in the record demonstrating that there was... No, no, no, not failure to comply with the original requirement, but the 15th B and 59 motions were untimely, right? The second set. Your Honor, we... They were required to be filed 28 days later after the judgment, and they were not. So is there any excusable neglect showing? Is there any reason why you couldn't have filed those within 28 days of the judgment? Yes, Your Honor, because the judge didn't issue the order denying them on the grounds of the local rule until that 30-day period had expired from the time of judgment. So we had... I thought he did it a week later. He did a week later, but we had filed those post-trial motions originally 26 days, which made them timely after the judgment, but the judge didn't issue the rule denying for noncompliance with the local rule until the period to appeal had passed, more than 30 days had passed. And so, therefore, we didn't have notice in order to be able to file within the 30 days after judgment, or 28 days, excuse me, after judgment, because the order denying them as noncompliant was issued after that period of time had expired. And you refiled the next day after you got that order? That's correct, Your Honor. We refiled the very next day. UPS was given the opportunity to respond, and the judge finally disposed of that last remaining 50B and 59 motion of Jildre and Slevin in January 21st, which made our notice of appeal eight days later timely. We also believe that the judge erred... We have about a minute left. Did you want to save any time for rebuttal? Oh, I'm sorry. Yes, I'll save the time for rebuttal. Thank you. Okay, we'll hear from opposing counsel. Good morning, Your Honor. Steven Gutierrez on behalf of UPS. This Court should not and need not reach the merits of the plaintiff's arguments for two reasons. One, the timely filing of a notice of appeal is obligatory and jurisdictional. And here it is clear that Ms. Doren-Slevin filed her notice of appeal well after expiration of the 30-day period. Well, it's a claim processing rule, isn't it, for an orderly claim processing? Why is it jurisdictional? Well, if you're talking about claim processing for the Rule 50 motions, meaning the 28-day deadline, we invoke the timeliness of that when she refiled her second set of motions. But with respect to the first set of motions, her notice of appeal clearly filed well after 30 days when the court originally disposed of those motions for failure to comply with the local rule. And with regard to the second set of motions and the motion to amend that was filed at the same time, we objected, as I mentioned, to the timeliness, and the court properly denied the motion to amend as moot. And so for those reasons, we think the court can dismiss the appeal for lack of jurisdiction. As this court well knows, under Rule 4, a notice of appeals required under Rule 3 must be filed with the district court within 30 days. And, in fact, interestingly here, the plaintiff had the opportunity to file notice of appeal even before judgment was entered. If a timely filing would have occurred, then the appeals period is told and then runs from the entry of the final order disposing of such remaining motion. A party's failure to file a notice of appeal within the timeframe mandated by statute deprives the court of jurisdiction in accordance with the holding in Bowles v. Russell, the U.S. Supreme Court. And so, as I said, it's an obligatory and jurisdictional requirement. Now, during that 30-day window, she could have appealed any of the court's underlying orders but chose not to do that. So, in my view, application of the principles are straightforward. The judgment entered on November 12th, and she filed her original set of motions timely, 26 days after entry of judgment. Relying on the local rules, which the court had every right to enforce, they're an important vehicle for which the court operates, and they carry the force of law, the court denied Ms. Dornslevin's motions for failure to consult with counsel under Local Rule 7.1. Did you demonstrate prejudice to the district judge? There is no argument that we were prejudiced to the district court judge. We simply argued that when she refiled the second set of motions, they were untimely utilizing the 28-day rule. So there was no prejudice to UPS? That's correct. Now, because a timely notice of appeal is mandatory and jurisdictional, that deprives this court of jurisdiction to hear an appeal of the first orders. Now, again, noting that— Let me make sure I understand the sequence. So she files the first set of motions 26 days in, right? Seven days later, the district court denies them on this procedural ground, but denies them. Correct. And your view is she had 30 days or 28 days from that point to file a notice of appeal? No, she had 30 days to appeal that order, denying those original set of post-trial motions, and that would have enabled her to appeal any of the underlying issues at the court. In fact, under Rule 4, she could have filed a notice of appeal and perfected it before entry of judgment. And so when I speak to the 28 days— But if she files a notice of appeal, that divests the district court of jurisdiction, doesn't it? If she files post-trial motions and then files a notice of appeal, the district court can then rule on the motions. You're correct. But the rule permits the notice of appeal to be filed before entry of judgment. And so the point I make is simply she had every right to file a notice of appeal and could have filed a notice of appeal in this case 30 days after the denial of the original set of post-trial motions. She chose instead to refile a second set of motions. And the trial judge was correct in finding that they were untimely under the 28-day rule because, first, he did not grant them any leave to amend. The local rule speaks to those filings being without prejudice but does not speak to any sort of relation back. And, frankly, under Rule 6, the court isn't allowed to extend the deadline, the 28-day deadline. So the court correctly determined when he denied the second set of motions that he did not have, that they were untimely under the 28-day rule. As to the motion to amend, the court denied that as moot because there was no relief, no life controversy left for the court to grant a remedy on should he decide, should he have decided that there was some merit to the motion to amend. Now, there was some argument here that the second refiled combined post-trial motions changed the result in this case. But, again, the denial of the first set of motions didn't alter the judgment in any way whatsoever. So under Wages v. IRS, cited in our brief, there is no tolling of the appeals deadline. Assuming for the moment that the appeal is properly before us, I don't ask you to concede, but I'd like to get to the merits if I could. The one argument that the other side makes that strikes me as plausible is that UPS has not complied with its own personnel policies under the so-called EDR, Employee Dispute Resolution Program. I'm just reading from the guidelines on page 3. Disputes covered under EDR pertain to such claims as, da-da-da-da-da, separation and legally protected rights. Separation is kind of a nice word for firing somebody. So it sounds as though the EDR program covers firing somebody. I look in vain through here for something that says, here are the formal requirements you need to comply with in order to trigger this. You don't need even, as far as I can tell, you don't need to say, I'm invoking EDR. You need to notify that you're having some problem. Why is that not a good argument? District Court rejected it out of hand and didn't let it go to trial. That's correct. So why was that right? Well, it's right for two reasons. One, the EDR policy doesn't prescribe or prohibit UPS from terminating someone's employment. Wait a minute. It says that the program covers termination. And it sounds like that's a procedure then that covers termination. And if she's got a problem, she writes a letter saying, I have a problem, and you say, UPS says you're fired. That doesn't strike me as complying with a procedure that's covered. So what's the answer? It does cover termination, but only for purposes of allowing one to grieve the termination, not for purposes of prohibiting the company from making the termination decision. But she complained about discrimination. The Human Resources Department started looking into it, and then she was fired. How is that an application of the EDR program that Judge Fletcher has just read from? Well, Your Honor, it was undisputed testimony from the plaintiff herself that she never invoked and never intended to invoke the EDR policy. So though she wrote an April 27th letter to HR Director Teft, that wasn't her exercising her right under the EDR policy. But is the plaintiff's intent relevant there? Most certainly. If she sent a letter where she complained of discrimination and asked that it be looked into, she didn't say the magic words about the EDR policy, but she did alert the company to a potential problem. Well, her intent would most certainly be relevant because it's whether she intends to avail herself of the process under the EDR policy is something she has to trigger. But there's no formal path to do that according to what Judge Fletcher was just reading from. Well, there is no formal path in the policy. But you are correct that the words EDR do not need to be used. But as I said earlier, you certainly have to hold the plaintiff accountable for her own failure to invoke the policy. What do you mean failure to invoke the policy? She complains about, and for the moment I'm not saying whether the complaint is well-founded or not, she complains about discrimination. That sounds as though that's the process, the EDR is the process that the company has designed for taking care of such a complaint. So why does she have to say EDR? Why does she even have to know the details of that being the policy? She just says, I've got this problem. Your policy is this. Well, here's how we deal with it. But then you didn't do it. If I accept your premise for a second, the bigger problem with the claim is that, again, it doesn't prohibit UPS from terminating her. UPS could have terminated her and gone through the EDR policy post-termination because it's merely a grievance arbitration process and nothing more. She chose instead to try to negotiate a severance agreement and work through filing a legal claim as opposed to taking advantage of the arbitration, the first mediation and then arbitration as compelled by the policy. The Montana Supreme Court, in interpreting the statute, says that the employer must send to the employee a copy of its procedures. Do you think that UPS complied with that policy by giving her simply a brochure and not a copy of the entire set of procedures, which I think was 25 pages long? Yes. The evidence in the record here is that the actual policy is 25 pages long. But the evidence is also that Mr. Tefft gave the EDR policy as an attachment to the termination letter that was given to Ms. Dorrance-Levin. It's our position that that does comply with the statute. There is no case that specifically defines the sum and substance of what constitutes a copy, but the EDR policy pamphlet has the entire process outlined for an employee to review and take advantage of. When did he give her the brochure? He attached it to his termination letter when he terminated her. But not the full copy? There's no evidence that Ms. Dorrance-Levin ever got the full 27-page copy. Did she get it when she was hired? I mean, did she ever get it? Well, I mean, she got it when part of the lawsuit, but prior to the lawsuit, did she ever get it? There's no evidence in the record that she received the EDR policy specifically. There is evidence in the record that she was educated on the UPS policies, in particular the UPS Code of Conduct, which was the basis upon which the company chose to terminate her employment. But the Code of Conduct is not the EDR policy, Your Honor. Oh, that's right. So as far as the record shows, she never saw this EDR thing, and the first time she got the brochure was when she was fired? That's correct. So you're saying, nonetheless, when she wrote the letter to Teft, she was supposed to say, I want to invoke your procedures? Well, she certainly knew about it undisputedly because she obtained the brochure, and that fact's conclusive. When did she obtain the brochure? When she was terminated. Right. But so when she writes the letter to Teft, she doesn't have it yet. And you're saying in that letter she has to invoke the procedure? No. Teft's letter to her is on May 18th. She wrote a separate letter back to Teft on May 27th, which would have been well after the receipt of the EDR brochure, wherein she could have exercised her rights under that process. But instead, if you read that letter specifically, you can see that the focus of that letter is all about negotiating a severance agreement and nothing more. Is there anything in the 25- or 27-page set of procedures that says that an individual employee must intend to invoke the EDR process? No. There are some remaining issues that Ms. Doren-Slevin argues in her appeal that we found we equally argue are not subject to this Court's jurisdiction, but I'm going to address anyway if you were to get to the substance. With respect to the jury instructions, Your Honor, I don't think there's any argument here that all of the instructions were consistent with Montana law. There is no basis for Ms. Doren-Slevin to argue that the jury was confused. Certainly, the termination letter that the EEOC, I misspoke again, the April 27th letter to Teft was in the record, but in the record for purposes of good cause. And the jury had that letter before it when it considered whether or not the company had good cause to terminate. In our brief, we cited to a number of Montana cases that addressed the good cause definition. We believe the jury instruction given on that definition was consistent with the law. The final point I would like to take with my last minute is to address the Billbrook BNSF railroad case, which is an unpublished opinion. We think that case is distinguishable. First, Judge Haddon in this case, and he did not excuse the mistake in his December 15th order denying the motions. And while the local rule dictates it's without prejudice, unlike the issue of the removal in the Billbrook case, the Rule 50 and 59 motions must be filed within 28 days. And Mr. Judge Haddon did not have discretion to enlarge that time, especially after UPS objected to the timeliness. Don't you think there's an element of unfairness here where the motion was filed during the motions were filed during the appropriate time, and the judge responded that it was not proper because 7.1 wasn't followed, but he did that after the time had run. So there's a week later, so they refiled right away at a time when they didn't have a chance to do it earlier within the time frame. Isn't there some inherent unfairness there to how that worked out? Well, I think, yes, there is an unfairness element if you're Ms. Doren-Slevin. But the rules are the rules. Judge Haddon didn't have the authority to enlarge the 28-day period. The second motions were filed well after that deadline, so he didn't have any discretion to rule on the merits of that. And what was the precise failure under the local rules? It was a failure to consult with opposing counsel. Is that quite right? It was a failure to state that the opposing counsel has no objection? Well, the rule requires that you contact counsel and then state within the body of the motion. It's a meet and confer requirement. I'm sorry? It's a meet and confer requirement. That's correct. And had there been a meeting? There had not when the original motions. It wasn't just failure to put it in the motion. It was an actual substantive failure to meet and confer. That's correct. Okay. Okay, I think I'll be out of time now. Thank you. Your Honors, when Jill Doren-Slevin sent the April 27th letter complaining of discrimination, she did not have a copy of the Employment Dispute Resolution Program. She's never had it, and it should be no surprise that she didn't intend to invoke it as far as the letter or what she writes in her two letters to TEFT, because she never received a copy of it. Submitting the brochure is substantively ‑‑ substantial compliance does not meet the requirements under Montana Code Annotated and the Edis v. Wheatland case from Montana that interpreted that provision requires that there be actual compliance of the employer. But Jill Doren-Slevin also contends that the court erred in the issue of not submitting the issues of retaliation because she proved she engaged in protected activity. She was subject to an adverse employment action afterwards, and she established that there was a causal link between the two. Is there any evidence that anyone at the company knew she'd filed a complaint at the EEOC before she was terminated? No, Your Honor, but it was tried by express consent that she had made that complaint directly to the employer of discrimination and harassment, and therefore it was still protected activity under the law. But that would be proof of retaliation, not for retaliation for filing an EEOC complaint, but proof of retaliation for making a complaint to the company. Correct, and that is protected activity under the law cited in our briefs. Finally, we contend that the judge was so heavy-handed in his interruptions and his preventing us from asking proper questions of the witnesses. He followed those interruptions with addressing the jury on some occasions directly to explain his complaints and criticisms of plaintiff's counsel, and he prevented us from eliciting testimony that went to the thrust of our case, including questions about those two letters, the employment dispute resolution process, whether she was responding to work, what her personal expenses were, and he also would interject when we attempted to impeach witnesses. Explain to me something that I'm not clear on. There is a trial summary at the beginning of the trial, which it's alleged that you limited your complaint on the retaliation issue to a complaint that the termination was due to the filing of the EEOC charge. Do you have a different position now than what this trial brief specifically limited you to before trial? Thank you, Your Honor. Actually, it was the final pretrial order which did reference that letter to Don Teft, but what UPS's position is is that we had somehow only relied on the complaint to the EEOC to which they contend they had no knowledge. But it was not some sort of surprise or prejudice issue to the defendant. We raised the issue in the second amended complaint. We briefed it in summary judgment motions. We objected to their failure to include instructions on the issue. And finally, it was part of the statement of the case that was read to the jurors at the commencement of the trial, so that when we elicited testimony about her report of the public policy violation and discrimination and elicited testimony about what Don Teft did and did not do in response, that issue was tried by express consent and under Rule 15b. It's a mandate that the court consider those issues as having been part of the pleading. So for the judge to deny or not let the jury hear the issue was in error because it was tried by express consent of UPS. But the judge was relying on that pretrial order. Is that correct? He was relying on a portion of it. Even though we had acknowledged that there was a letter to Don Teft, the April 27th letter was referenced in that, and it was litigated throughout the case. So we would respectfully take the position that because of the judge's constant interruptions, he made it very clear to the jurors what his position was and that he was biased. And we would respectfully request that the court remand on all issues and send the case to a different judge so that the appearance of fairness can be preserved. Thank you, Your Honors. Thank you.
judges: Kozinski, W. Fletcher, Tunheim